## Case No. 14,864.

### UNITED STATES v. COOPER.

[3 Quart. Law J. 42.]

District Court, W. D. Virginia. Oct. Term, 1857.

CRIMINAL LAW—EVIDENCE—CONFESSION TO MAGISTRATE—INDUCEMENT—SUBSEQUENT CONFESSIONS—WARNING.

1. Confessions made to a justice of the peace, while officially engaged in the examination of a criminal charge, are inadmissible, if obtained by any inducement held out by the justice.

2. A prisoner having been once induced, by improper influences, to make a confession, no other confessions of a like character, though made at a subsequent time and to different persons, are admissible, even when voluntarily made, unless it be shown that the prior improper influence has been removed, either by an explicit and distinct warning, or some other equally cogent means.

An indictment was found against James Cooper, charging him with abstracting and embezzling certain letters, taken by him out of a mail bag; he being a mail carrier. Plea, not guilty. The prisoner is a boy, fifteen years old.

F. B. Miller, U. S. Dist. Atty.

Floyd, Cook & Brown, for prisoner.

Robert F. Dorton was the first witness called for the prosecution, and he testified, in

substance, as follows: "The prisoner was a mail carrier on a route leading through Scott county, and he carried the mail from Pattonsville to Rye Cove, in that county. I am a justice of the peace for Scott county. On the 27th May last, the post-master at Rye Cove came to me, and said that the mail had been robbed, and applied for a warrant against the prisoner. I concluded to go to the post office before issuing a warrant. I did go, and found the prisoner there in custody. I examined the mail and mail bag. There was a hole or opening in the bag; and three or four letters were in a very confused and improper condition, having evidently been opened. I said to the prisoner: 'Mr. Nicholls (the post-master at Pattonsville) never put up the mail in this condition. It is a very plain case. You might as well confess the whole matter. It will not make the case any worse for you.' Thereupon, he said that he had taken the letters out of the mail bag, and that he took them out to get money."

The prisoner's counsel immediately objected to this testimony, and moved the court to exclude from the jury all evidence of confessions obtained under such circumstances. They relied upon Smith's Case, 10 Grat. 734.

Before deciding the question, THE COURT propounded some questions to the witness, from which it appeared uncertain whether the warrant was actually issued before the confessions were made or not; but the boy was in custody. It was also left uncertain whether the prisoner knew that the witness was a justice or not; but the witness distinctly stated that he was acting in his official capacity, and investigating the charge when the confessions were made.

BROCKENBROUGH, District Judge. The rules relative to the admission of confessions in criminal cases are well known to the profession. It has long been held that a free, voluntary confession is the most clear and satisfactory evidence of guilt. But to produce this effect, the confession must be strictly of the character I have mentioned. Such is the infirmity of human nature, in circumstances so distressing as those which often surround a prisoner, that men have been known to make false confessions, under a hope of ultimate escape. It has therefore been wisely and mercifully settled that such evidence is to be received with very great caution. If indeed either by threats of injury, or hopes of benefit, made or held out by others, standing in certain relations towards the prisoner, or the offence, then the confession must be rejected.

Among the rules most carefully elaborated, and strictly enforced is this: that if the confession has been made to a person in authority in the premises, and has been induced by anything said or done by such person, calculated to excite either hope or fear in the prisoner's mind, then the confession is inadmissible. It has always been understood, without a dissenting voice, that a justice of

the peace engaged in the official investigation of a criminal charge, is a person in authority in regard to such charge. In regard to persons bearing that character, too much care cannot be exercised to prevent them from this reprehensible tampering with parties arraigned before them. In this case, certainly the rule ought not to be relaxed, when we look to the prisoner's extreme youth, and the pretty plainly apparent fact that he does not, at any rate, possess more than a very moderate share of intellect. I should have no hesitation in rejecting this testimony if it were not for the hearing of the decision of the court of appeals of Virginia in Smith's Case.

In that case the prisoner made an explicit and important confession to the person to whom he was an apprentice, and that person was also a justice of the peace; but he was not engaged in the investigation of the offence, and had nothing whatever to do with the prosecution. It was contended that both in his character of master and of justice, this person was a person in authority, in the meaning of the rule. He induced the prisoner to make the confession. It was objected to, but the court of appeals decided that the confession was admissible. I cannot concur in the propriety of that decision. I think it goes a bow shot beyond all the former authorities. Moreover, it is to be noticed that the court was divided. It was a decision by three judges against two. If I were a circuit judge of Virginia, I should give the court of appeals an opportunity, if possible, to revise the decision. But in the capacity of a federal judge, I am bound by the decision. By the act of congress under which I derive my powers, the law of the state wherein the court is held is made the rule of its decisions; and it is well settled that the judgment of the supreme judicial tribunal of a state is the authoritative exposition of the law of that state. I would therefore be bound by the decision in Smith's Case [supra] if I did not think the case at bar could be distinguished from that case.

And I do think it is clearly distinguishable. This case contains the important element, wanting in Smith's Case, that here the justice was officially engaged in examining the very charge in relation to which he induced the prisoner to make the confession. He was undoubtedly a person in authority in the premises. I do not consider it material to enquire whether the warrant of arrest had actually emanated before the confession was made. The prisoner was confronted with his judge and his accuser; and his conduct was the subject of a pending enquiry. Nor do I deem it important to enquire into the fact as to his knowledge of Mr. Dorton's official character. At the most, this is an open question, and the prosecution ought to remove all doubt as to the fact, for, before the confession can be received, the United States must show the propriety of its admission. I think I am not

only justified in presuming that the prisoner did know that Mr. Dorton was a justice, but that I am bound so to presume in the absence of proof to the contrary. The evidence must be excluded.

Mr. Nottingham, the jailor of Scott county, was introduced, and said: "I know nothing of this case, except from confessions made to me by the prisoner, after he was committed to prison. He was confined in my jail on the 27th day of May last, and remained there till the 6th of September, and during that time he made several different confessions, relative to this matter." The prisoner's counsel objected to the admission of these confessions, until it should appear that full and fair warning had been given to the prisoner as to the effect of his confessions. It is contended that when it has once been shown, that the prisoner has been improperly induced to make a confession, no subsequent confession, though made at other times and to other persons, can be used against him, unless it be shown that his mind has been completely relieved of the improper influences formerly operating upon it. The court enquired of the witness whether he had warned the prisoner of the consequences of his confessions. He answered that he had not, but had only told him "that it was a penitentiary offence." He further stated that the confessions made to him were substantially identical with that made to the examining justice. He could not state the exact time at which the first confession was made; but thought it must have been soon after the prisoner came into custody.

BROCKENBROUGH, District Judge. A good abstract of the law on this point is found in 1 Greenl. Ev. § 221. I there find the rule laid down on satisfactory authority to be, that where improper means have once been used to induce a confession, which has therefore been rejected, a subsequent confession cannot be received, unless it appear that the influence of those improper means has been totally done away with. From lapse of time, or other circumstances and facts, the influence of former inducements may be presumed or proved to have ceased; but in the absence of any such circumstances, the influence of the motives, proved to have been offered, will be presumed to continue, and to have produced the confession, unless the contrary is shown by clear evidence; and the confession will therefore be rejected.

Applying this rule to this case, there can be no doubt as to the result. It is not pretended that any warning was ever given to this boy, after he was imprisoned, which was on the same day that he made his original confession, already rejected. A sufficient period of time had not elapsed to raise any presumption of freedom from improper influences; and this case affords an excellent illustration of the necessity for such a restriction. This boy has been improperly induced to make a confession. He could not know that such an admission could not be given in evidence. He considered his fate sealed by his former declarations, and, in the desperation of his condition, was ready to open his heart to any one who would listen to him. It would be cruel oppression to permit such admissions to go in evidence. Mr. Nottingham must stand aside.

Robert Gibbony, deputy marshall of the district, was called to the stand. He said that on the 6th September he took the prisoner out of Scott jail, and removed him to Wytheville. From Estillville to Abingdon he travelled with the prisoner in a buggy. On the way the prisoner made confessions to him, similar to those spoken of by the other witnesses. The witness gave prisoner no caution, but suffered him to talk as he pleased, using no efforts to extract anything from him, and his statements were voluntary so far as this witness was concerned.

BROCKENBROUGH, District Judge. This evidence falls within the same category as that of the jailor, and must share the same fate.

There being no other evidence, the jury, without leaving the box, found the prisoner not guilty.